IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

STEPHEN P. GELLER,

    Plaintiff,

v.                            No. 13-1196

HENRY COUNTY BOARD OF
EDUCATION,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S CLAIMS UNDER THE ADEA AND THRA, AND DISMISSING
WITHOUT PREJUDICE CLAIMS UNDER TENN. CODE ANN. § 49-5-510

---

*INTRODUCTION*

The Plaintiff, Stephen P. Geller, brought this action against the Defendant, the Henry County Board of Education (the "Board"), on June 21, 2013, alleging violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-101, *et seq.* ("THRA"). The Plaintiff also sought relief for unlawful transfer under Tennessee Code Annotated § 49-5-510. Before the Court is the Defendant's motion for summary judgment on all of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 27.)

*STANDARD OF REVIEW*

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the

nonmoving party." *Bible Believers v. Wayne Cnty.*, ___ F.3d ___, 2014 WL 4211190, at *5 (6th Cir. Aug. 27, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance Auth.*, ___ F.3d ___, 2014 WL 4067748, at *3 (6th Cir. Aug. 19, 2014) (quoting *Anderson*, 477 U.S. at 251-52).

*FACTS*

The following material facts are undisputed unless otherwise noted. Geller was born on April 24, 1948. He began working for the Henry County school system in the 1990-91 school year as a special education assistant. Plaintiff was assigned to a classroom teacher position from 1993 to 2006. During this period, he received no administrative training or licensure, completing only the continuing education required to maintain his teaching license. In 2006, Rick Kreisky, Defendant's then director of schools, assigned Geller to the position of assistant principal at Henry County High School ("HCHS"). At that time, the Board's rules on the classification and qualifications for administrative and supervisory personnel read in part as follows:

> To be considered for certificated administrative or supervisory positions, the applicant must show the following qualifications:
>
> 1. Professional teaching certification; and
>
> 2. Administrative or supervisory certification and experience in accordance with state law and State Board Rules and Regulations in the appropriate area based on the minimum of a master's degree.

2

> Non-certified administrative and supervisory personnel shall possess sufficient training and experience to perform the services required and such additional qualifications as the Board and director of schools shall determine.

(D.E. 29-3 at 50.) Geller was placed in the position on the condition that he obtained a master's degree, which he received from Bethel University in McKenzie, Tennessee in 2008.

It is undisputed that, prior to the 2010-11 school year, Plaintiff spent most of his time disciplining students and the remainder divided among conducting teacher evaluations, leading emergency drills, monitoring the lunchroom and overseeing the school's building facilities. Just before the school year began, he requested to be relieved of disciplinary duties due to shoulder pain, which made it difficult for him to apply corporal punishment.[1] At that time, he remained an assistant principal and performed other duties. In his deposition, he estimated that he expended fifteen percent of his time directly advising students and the same amount leading collaborative curriculum meetings. He further concluded that twenty-five percent of his work was spent supervising the cafeteria, five to ten percent on discipline, ten to fifteen percent overseeing school maintenance and safety, and five percent dealing with school bank deposits.

In the 2011-12 school year, Geller stated in his deposition that his time evaluating teachers increased to an overall percentage of thirty-five to forty percent, although the evaluations did not take the same amount of time every day. The functions of lunchroom monitoring, building safety, collaborative teaching and discipline remained, he recalled, approximately at 2010-11 levels.[2]

---

[1] Although a younger male employee took over this duty, Plaintiff does not aver that this action constituted a violation of law.

[2] In an affidavit filed subsequent to his deposition, the Plaintiff contended that these estimates contemplated a ten-month school term and did not take into account one month in the summer when he simply monitored the school facility. Thus, he submits, the percentages were

3

Throughout his employment with the Henry County school system, Geller never possessed an administrator's license. In 2009, administrator preparation rules in Tennessee changed. The new rule provided that, "[e]ffective September 15, 2009, assistant principals, teaching principals, or dual assignment personnel with more than fifty percent (50%) of their responsibilities involved in instructional leadership must be properly licensed or be enrolled in a State Board approved instructional leadership preparation program." Tenn. Comp. R. & Regs. 0520-02-03-.02(6). Obtaining licensure under the new paradigm would have required additional coursework and continuing education, as well as a passing score on the Praxis test.[3]

In March 2012, Plaintiff submitted a form to the State of Tennessee Department of Education requesting that his administrator's license be "upgrade[d]," based on his attendance at an Assistant Principal's Academy class. At the conclusion of the course, Geller maintains, the instructor encouraged the attendees to complete and submit the form to advance their licenses.[4] In response to the form's submission, a letter was issued to Geller and Henry County Director of

---

actually lower than speculated in his deposition, as the summer month constituted nine percent of his overall time. He stated therein that

> [a]s I explained in my deposition, I spent two full hours out of the day sitting in the lunchroom, during lunch periods. While I did assist with curriculum meetings and evaluations, these tasks did not equate to fifty percent (50%) or more of my time. I also made bank deposits, assisted with discipline, oversaw building and grounds maintenance, and conducted safety drills. I spent more than fifty [percent] (50%) of my time performing tasks that do not encompass "instructional leadership."

(D.E. 32-1 at ¶ 8.)

[3] Praxis is a series of tests used by many states in the teacher licensing process. *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 835 (E. D. La. 2007).

[4] Geller related in his deposition that he really did not know what the "upgrade" would be, but hoped it would be his "initial administrator's license." (D.E. 29-2 at 9.)

Schools Sam Miles in May 2012 by Dr. Kenneth Nye of the State of Tennessee Department of Education's Office of Teacher Licensing. The letter stated as follows:

> This letter is to inform you that our office has denied the application for advancement to the Professional Administrator License (PAL) which was received in our office on March 7, 2012. The reason for the denial is you do not currently hold a Beginning Administrator License (BAL) from which to advance to the Professional Administrator License. Your state license file does not indicate a previous application for the BAL license or that you attempted and passed the required Praxis SLLA exam to obtain the BAL license.
>
> Please note that beginning with the 2009-10 school year, the State Board of Education has required educators serving as an assistant principal with more than 50% time of instructional leadership responsibilities to hold an administrator license. Educators serving as a principal or instructional supervisor have always been required to hold an administrator license. Your employment record indicates serving as an assistant principal starting with the 2006-07 school year.
>
> Your state license file indicates completion of a Masters Degree at Bethel University in 2008. I suggest you contact the university so they can assist you in determining what else must be completed along with the Praxis SLLA exam to be eligible for the new administrator license called the Instructional Leadership License -- Beginning (ILL-B). The standards for the BAL license went out of effect September 1, 2011 after the State Board of Education adopted new administrator licensing standards in 2008-09. You will not be able to apply for an initial BAL license as the standards for that administrator license have expired. However, you and the employing Tennessee school system can apply for the "Aspiring" level of the new administrator license (i.e. ILL-A) while serving as an assistant principal once you are admitted to the new Leadership Program.
>
> Once you complete requirements to obtain the ILL-B license, you can complete the requirements for advancing to the professional level of that license (i.e. ILL-P) if you are serving in an administrator position. Bethel University can recommend you for the ILL-B license based upon completion of the new Leadership Program requirements which include passing the Praxis SLLA exam.

(D.E. 27-3 at 1.) It is undisputed for purposes of summary judgment that Miles was unaware Geller lacked an administrator's license prior to his receipt of Nye's letter.

On June 28, 2012, Miles met with Plaintiff to discuss the letter. He informed Geller that he must be properly licensed prior to the beginning of the upcoming school year. It was

5

Plaintiff's position, however, that he did not need an administrator's license to perform the duties of his job because he did not spend fifty percent or more of his time in instructional leadership, a term that was not defined in Nye's communication. There is no dispute that, at the time of the meeting, Geller was the only unlicensed administrator in the Henry County school system. Miles informed Plaintiff that, if he could not obtain an administrator's license before school began August 6, 2012, he would be removed from his position as assistant principal. Geller concluded the meeting by telling Miles that he intended to retire at the end of the 2012-13 school term. Miles responded by stating that he would attempt to find a non-administrative assignment for the Plaintiff. As of the date of the meeting, Geller was transferred out of the position of assistant principal.

Renae Lassiter, born May 21, 1973 and at the time departmental chair of physical education and wellness at HCHS, was moved into Geller's position as assistant principal. It is undisputed that she possessed the administrative license that Plaintiff lacked, but had not previously served as an assistant principal or principal. Miles advised Geller by telephone of Lassiter's transfer on July 11, 2012. During the conversation, the director of schools related that the transfer would not have occurred if Geller had not caused Nye to issue the letter regarding his unlicensed status. Miles advised Plaintiff on July 27, 2012 that he would be assigned to Henry County's alternative school.

On September 14, 2012, the two men met again. At this meeting, Geller told Miles that he believed he had been wrongfully transferred. Plaintiff did not bring up the issue of age and, therefore, it was not discussed. Two months later, on November 7, 2012, Geller requested an internal investigation into the matter, alleging for the first time discrimination based on age. The investigation report concluded that the sole motivating factor behind Plaintiff's transfer was his

failure to be properly licensed for an administrative position.[5] Geller sought appellate review of the decision by the Board. In a monthly meeting on December 13, 2012, the Board confirmed the findings set forth in the investigative report.

The Plaintiff retired from the Henry County school system at the end of the 2012-13 term. It is undisputed that he performed his duties as an assistant principal in a satisfactory manner, receiving the highest score possible on his evaluation, and that HCHS Principal Lennies McFerren never sought his transfer from that position.

*CONTENTIONS OF THE PARTIES AND ANALYSIS*

Age Discrimination.

Geller alleges age discrimination in violation of the ADEA and THRA. The federal statute prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). "The purpose of the ADEA is to protect older workers from being deprived of employment on the basis of inaccurate and stigmatizing stereotypes and to ensure that employers evaluate their employees on the basis of their merits and not their age." *Flones v. Beaumont Health Sys.*, ___ F. App'x ___, 2014 WL 2497557, at *4 (6th Cir. June 4, 2014) (quoting *Allen v. Diebold, Inc.*, 33 F.3d 674, 676-77 (6th Cir. 1994)) (internal quotation marks omitted). Similarly, the THRA forbids the "discharge [of] any person or . . . discriminat[ion] against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . age . . . ." Tenn. Code Ann. § 4-21-401(a)(1). Courts are to analyze age discrimination claims brought under the THRA in the same manner used to determine ADEA claims. *Aldrich v. Rural Health Servs.*

---
[5] Geller does not allege that the investigation was discriminatory.

*Consortium, Inc.*, ___ F. App'x ___, 2014 WL 3930472, at *2 (6th Cir. Aug. 13, 2014). Age discrimination claims may be proven by either direct or circumstantial evidence. *Flones*, 2014 WL 2497557, at *5. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* However, as Geller appears to rely only on circumstantial evidence, he must utilize the familiar burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* Thereunder, the plaintiff must first prove a *prima facie* case of discrimination on the basis of age. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014). That is, he bears the burden of establishing that "(1) he was a member of a pro[t]ected class, i.e., [forty] years old or older, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position; and (4) he was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age." *Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014), *petition for cert. filed* (83 U.S.L.W. 3005) (U.S. June 18, 2014) (No. 13-1516). A plaintiff's burden at the *prima facie* stage is not an onerous one. *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 466 (6th Cir. 2014).

Upon a successful showing of a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the alleged discriminatory action. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). If the employer does so, the plaintiff bears the burden of proving that the employer's justification was pretext for discrimination and that the alleged adverse action was due to age. *Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 334 (6th Cir. 2012). The employee must

ultimately show by a preponderance of the evidence that age was the but-for cause of the employer's alleged adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

Even assuming the Plaintiff has demonstrated a *prima facie* case of age discrimination, the Court finds that the Board has identified a legitimate nondiscriminatory reason for removing him from the assistant principal position – failure to obtain proper licensure – which he has failed to show was a pretext for discrimination. *See Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). "A plaintiff can establish pretext by proving (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [his] discharge, or (3) that they were *insufficient* to motivate discharge." *Flones*, 2014 WL 2497557, at *6. This method of proof is not meant to be so formalistic in its application that one loses sight of the forest for the trees. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.*

> This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is. One can distill the inquiry into a number of component parts, and it can be useful to do so. But that should not cause one to lose sight of the fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination.

*Id.*

It is undisputed for purposes of summary judgment that at least five administrators in the Henry County school system are in the same protected class as Geller and that none of those persons were discharged or transferred. As noted previously herein, it is the position of the Plaintiff that the administrator license mandate did not apply to him because he did not spend more than fifty percent of his time in "instructional leadership." While neither party has presented evidence or cited to case law or legislative materials defining "instructional leadership"

9

for purposes of the licensing requirements, Defendant has referred the Court to documentation outlining Tennessee's "Instructional Leadership Standards" ("TILS"), which it submits offers guidance on the duties of an "instructional leader." It appears to the Court that the Plaintiff does not dispute that at least some of his duties, including teacher evaluations and attending curriculum meetings, might fall under the rubric of the TILS. He contends, however, that others do not, including the physical act of driving to the bank to make a deposit, upkeep and maintenance of facility grounds and monitoring the lunchroom.

In support of his position that Miles' determination that he could not maintain his assistant principal position absent an administrator license was pretextual, Geller points to evidence that (1) Miles had the option to waive the license requirement for a candidate he considered "good"; (2) the director of schools' posting of the assistant principal position only required an applicant to have documentation of a plan to complete licensure within a year; (3) during one of their meetings concerning the Nye letter, Miles told him he was a "liability"; (4) the director of schools called him a "flunky" during an event in front of his colleagues; and (5) Miles wanted a "young" individual to serve as assistant principal.

Miles testified in his deposition that he would be willing to waive the mandate for a "good candidate," **if** that person planned on beginning the licensure process. He related that he asked Geller if he intended to pursue licensure and hoped he would. Plaintiff testified in his deposition that he was told a director of schools could obtain a one-year waiver with a simple request. Thus, the undisputed evidence reveals that any waiver that would have been available contemplated that the person holding the assistant principal's position would, within a relatively short time, become licensed. This was also reflected in the job posting. Geller has pointed to no evidence, however, that he had or expressed any intention of or plan for initiating the licensing

process, with or without a waiver.  There is no proof that the licensure mandate was or would have been waived indefinitely for anyone, regardless of their age.  In addition, Plaintiff offers no evidence that the "liability" and "flunky" comments were ageist, but only that they were hurtful considering his long service and good evaluation.

With respect to Miles' purported desire for a "young" assistant principal, Geller cites to various deposition testimony, all of which offers little support, at best, for his claims.  He first refers to statements by the director of schools about administrators in the school district and their ages.  The testimony reflects that three administrators were hired by Miles, one of whom was in his thirties, one who had close to thirty years' experience, and one whose age he did not know.  He also transferred Sam Tharpe, who was fifty-five to sixty years old, from a principal's position at a kindergarten through eighth grade school to the same job at a ninth grade school.

Plaintiff further makes reference to his own deposition as well as that of Lassiter.  The cited pages of Geller's testimony dealt, as did those of Miles, with the ages of various administrators in the Henry County school system.  Plaintiff recalled therein that Michelle Webb, Maria Cox, Mike Denman, Mike Bell and Daniel Armstrong are in their thirties; Clay Lindsey is in his forties; Amy Veazey is in her fifties and Lennies McFerren is in his sixties.  However, according to Miles' deposition, he hired Lindsey but did not hire Webb, Cox or Denman, as they already worked for the school system when he became director of schools.  There is no evidence to suggest that Veazey or McFerren suffered age discrimination.  Page seventeen of Lassiter's deposition, cited by the Plaintiff, simply reflects that she was hired to replace Geller.  Although she testified at page twenty that Miles "just pretty much told [her] he thought that [she] was a good, young leader," the statement fails to indicate any more than the obvious – Lassiter was

11

young.  Any assumption that the comment meant the director of schools intended or preferred to hire someone under the age of forty is mere speculation.

Viewing the evidence in the light most favorable to the Plaintiff, none of the circumstantial evidence presented by him provides a basis upon which a reasonable juror could find that the Board acted with discriminatory animus based on age.  Rather, he has offered nothing more than "mere personal belief, conjecture, and speculation," which are insufficient to support an inference of discrimination.  *See Hall v. OhioHealth Corp. Doctor's Hosp.*, 436 F. App'x 430, 433 (6th Cir. 2011) (citing *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997)).  As he has failed to establish a question of fact as to whether age discrimination was the but-for cause of his transfer from the position of assistant principal, summary judgment is warranted.  *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 148 (2000) ("an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"); *Chen*, 580 F.3d at 400 n.4 (same).

<u>State Law Claim under Tennessee Code Annotated § 49-5-510.</u>

Having disposed of Plaintiff's allegations against the Board with respect to age discrimination, the Court now turns to his state law claim pursuant to Tennessee Code Annotated § 49-5-510.  The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  Absent any remaining federal claims against the Defendant, the Court

finds, in its sound discretion, that dismissal of Plaintiff's § 49-5-510 claim without prejudice is warranted. *See Weeks v. Portage Cnty. Exec. Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## *CONCLUSION*

Based on the foregoing, the motion of the Defendant for summary judgment is GRANTED and the Plaintiff's claims under the ADEA and THRA are DISMISSED. The Clerk is DIRECTED to enter judgment in favor of Defendant on those claims. Geller's claim under Tennessee Code Annotated § 49-5-510 is DISMISSED without prejudice.

IT IS SO ORDERED this 9th day of September 2014.

                                                s/ J. DANIEL BREEN
                                                CHIEF UNITED STATES DISTRICT JUDGE